UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

In re:  Case No. 3:11-bk-9122-PMG

Thomas Matthew DiVenere,

                Debtor.  Chapter 7

Gordon P. Jones,
as Chapter 7 Trustee,

                Plaintiff,

vs.  Adv. No. 3:13-ap-270-PMG

Thomas Matthew DiVenere,

                Defendant.

**FINDINGS OF FACT, CONCLUSIONS OF LAW,
AND MEMORANDUM OPINION**

**THIS CASE** came before the Court for a final evidentiary hearing in this adversary proceeding.

Gordon P. Jones, as Chapter 7 Trustee, entered into a compromise of controversy with the Debtor, Thomas Matthew DiVenere, during the Debtor's Chapter 7 case. The Debtor did not comply with the terms of the Compromise, and the Trustee subsequently filed the Complaint that commenced this adversary proceeding. In the Complaint, the Trustee asserts that the Debtor's discharge should be denied or revoked based on his noncompliance with the Orders entered pursuant to the Compromise.

1

For a debtor's discharge to be denied under §727(a)(2)(B) or §727(a)(6)(A) of the Bankruptcy Code, a plaintiff must show that the debtor intended to hinder or defraud his creditors, or that the debtor willfully and intentionally refused to obey a court order.

In this case, the evidence does not establish that the Debtor had the financial ability or resources to make the payment due pursuant to the Compromise, or to comply with the Orders related to the Compromise. Accordingly, the evidence does not establish that the Debtor's noncompliance with the Orders was willful and intentional, and the Debtor's discharge should not be denied based on his failure to perform under the Compromise.

**Background**

The Debtor is an attorney who has worked as a consultant and businessman. On December 20, 2011, the Debtor filed a petition under Chapter 11 of the Bankruptcy Code, and the Chapter 11 case was converted to a case under Chapter 7 on June 18, 2012.

On February 7, 2013, the Chapter 7 Trustee filed a Notice of Intent to Compromise Claims in the converted case. (Doc. 214). Generally, the Compromise was intended to resolve three categories of issues between the Trustee and the Debtor: (1) the Trustee's claim that certain real and personal property scheduled by the Debtor was property of the estate; (2) the filing of the Debtor's tax returns for the 2009, 2010, and 2011 tax years; and (3) the receipt by the Debtor of $20,000.00 from the post-conversion sale of certain real property located in Colorado. In order to resolve these issues, the Compromise provided that:

> (1) The Debtor shall pay the Trustee $20,000 (the "Settlement Payment") in (i) nine (9) equal monthly payments of $500, beginning on February 1, 2013 and continuing on or before the first (1st) day of each month for eight (8) months thereafter, and (ii) an additional lump sum payment of $15,500 due on or before November 1, 2013.

2

. . .

    (3) The Debtor shall file the Returns by May 1, 2013.

(Doc. 214, pp. 4-5). The Compromise also provided that the Settlement Payment constituted property of the bankruptcy estate, and that the Trustee would be entitled to the entry of a turnover order in the event that the Debtor defaulted under the Compromise.

On April 10, 2013, the Court entered an Order Approving Compromise between the Trustee and Debtor. (Doc. 243). The Order Approving Compromise provided in part that the Debtor "shall comply with all of the terms of the approved compromise."

On April 22, 2013, the Trustee filed an Affidavit of Default. (Doc. 247). According to the Affidavit, the Debtor had "failed to make any payment to the Trustee under the terms of the Compromise."

On April 24, 2013, the Court entered an Order of Debtor's Default on Notice of Intent to Compromise Claims. (Doc. 250). Paragraph 1 of the Order provided:

> Within ten (10) days of the entry of this Order, the Debtor shall turnover to the Trustee $20,000.00, plus interest at a rate of $9.88 per day from the date of this Order until the $20,000 balance is paid.

In the Order, the Court also reserved jurisdiction to award the fees and costs allowable to the Trustee under the Compromise.

On July 29, 2013, the Debtor filed a Motion for Partial Relief from the Order Approving Compromise between the Trustee and the Debtor. (Doc. 278). In the Motion, the Debtor asserted that the United States Trustee had filed a separate action to deny his discharge, and that the pendency of the discharge action prevented him from finding gainful employment. Because of his inability to locate

3

work, the Debtor asserted that he was unable to complete the arrangement with the Chapter 7 Trustee under the Compromise. (Doc. 278, ¶ 43).

On August 14, 2013, the Court entered an Order denying the Debtor's Motion for Partial Relief from the Order approving the Compromise. (Doc. 294).

## Discussion

In the Complaint currently before the Court, the Trustee asserts that the Debtor's discharge should be denied or revoked because the Debtor did not comply with the Orders entered with respect to the Compromise.

The Complaint contains three Counts. Count I is an action to deny the Debtor's discharge pursuant to §727(a)(2)(B) of the Bankruptcy Code, based on the Debtor's transfer or concealment of the payment due under the Order of Debtor's Default. Counts II and III are actions to deny or revoke the Debtor's discharge pursuant to §727(a)(6)(A) of the Bankruptcy Code, based on the Debtor's refusal to obey the Court Orders requiring him to file the tax returns for 2009, 2010, and 2011, and to make the Settlement Payment to the Trustee.

The Debtor provided the tax returns to the Trustee after the Complaint was filed. (Transcript, p. 28). The remaining issue involves the Debtor's failure to make the Settlement Payment due under the Compromise and related Orders.

### A. The Statute

Section 727 of the Bankruptcy Code governs the discharge of a debtor in a Chapter 7 case. Generally, an individual Chapter 7 debtor will receive a discharge unless a plaintiff establishes one of the specific exceptions to discharge found in §727(a). In evaluating the exceptions, Courts have recognized that the complete denial of a debtor's discharge is a harsh sanction. Consequently,

4

exceptions to discharge should be construed strictly against the plaintiff and liberally in favor of the debtor. In re Oakley, 503 B.R. 407, 423 (Bankr. E.D. Penn. 2013).

The two exceptions to discharge at issue in this case are found at §727(a)(2)(B) and §727(a)(6)(A) of the Bankruptcy Code. Those sections provide:

**§727. Discharge**

(a) The court shall grant the debtor a discharge, unless—

. . .

(2) the debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this title, has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed—

. . .

(B) property of the estate, after the date of the filing of the petition;

. . .

(6) the debtor has refused, in the case—

(A) to obey any lawful order of the court, other than an order to respond to a material question or to testify.

11 U.S.C. §727(a)(2)(B), (a)(6)(A)(Emphasis supplied).

For a debtor's discharge to be denied under either exception, a plaintiff must prove that the debtor acted with improper intent.

The purpose of §727(a)(2)(B), for example, is "to prevent the discharge of a debtor who attempts to avoid payment to creditors by concealing or otherwise disposing of assets." In re Cutaia, 410 B.R. 733, 738 (Bankr. S.D. Fla. 2008)(quoting In re Davis, 363 B.R. 614, 619 (Bankr. M.D. Fla. 2006)). For a debtor's discharge to be denied under §727(a)(2)(B), a plaintiff must show a transfer or

5

concealment of property of the estate, and "an improper intent (i.e., a subjective intent to hinder, delay, or defraud a creditor.)." In re Seligman, 478 B.R. 497, 502 (Bankr. N.D. Ga. 2012)(quoting In re Parnes, 200 B.R. 710, 713 (Bankr N.D. Ga. 1996)).

Similarly, for a debtor's discharge to be denied under §727(a)(6)(A), the debtor must have "refused" to obey a court order, and not simply "failed" to obey the order. "To obtain revocation on this ground, [the plaintiff] was required to show that the Debtors willfully and intentionally refused to obey a court order." In re Matos, 2008 WL 596744, at 2 (11th Cir.). The refusal must be the result of "willful, intentional disobedience or dereliction, and not merely inadvertence or mistake." In re Harmon, 379 B.R. 182, 189 (Bankr. M.D. Fla. 2007)(quoting In re Costantini, 201 B.R. 312, 315-16 (Bankr. M.D. Fla. 1996)).

## B. The evidence

In the case, the focus of the Trustee's Complaint is the Debtor's noncompliance with the terms of the Compromise.

Count I of the Complaint is based on §727(a)(2)(B) of the Bankruptcy Code. In Count I, the Trustee alleges that the Debtor transferred or concealed the Default Payment. The Default Payment is defined as the Settlement Payment of $20,000.00, plus interest, that was due to the Trustee pursuant to the Order entered after the Debtor defaulted on the Compromise with the Trustee. (Doc. 1, ¶¶ 45, 46, 54).

Counts II and III of the Complaint are based on §727(a)(6)(A) of the Bankruptcy Code. In Counts II and III, the Trustee primarily asserts that the Debtor did not obey the Order approving the Compromise or the Order of Debtor's Default. (Doc. 1, ¶¶ 60, 61, 68, 69). According to the Trustee, the Debtor entered into a Compromise that provided for the Debtor to make a Settlement Payment of

6

$20,000.00 to the Trustee, the Compromise was approved by a Court Order directing the Debtor to comply with the terms of the Compromise, and the Compromise was confirmed by a subsequent Order of Default that also directed the Debtor to make the payment. The Trustee asserts, however, that the Debtor has not made any portion of the Settlement Payment, and that the nonpayment constitutes a violation of the Court's Orders. (Transcript, pp. 6-7, 116-17).

The Debtor acknowledges that he has not made the Settlement Payment. (Transcript, pp. 81, 82, 108, 109).

The Debtor contends, however, that he is financially unable to make the Settlement Payment, and that his noncompliance with the Court's Orders is not willful or intentional.

The Debtor testified, for example, that he believed when he entered into the Compromise that he would be able to make the Settlement Payment. Specifically, the Debtor testified that he was negotiating the sale of a medical device to a large company at that time, and believed that he would be paid for his services when the sale closed. According to the Debtor, however, the sale was not concluded and he was not compensated for his work, and he therefore sought relief from the terms of the Compromise based on his inability to pay the Trustee. (Transcript, pp. 84-85; Main Case Doc. 278).

The Debtor further testified that he had no income in 2012, 2013, or 2014, other than rental income, and that he has been unable to locate employment in his area of experience. (Transcript, pp. 77, 81-82, 106). In other words, the Debtor testified that he does not have $20,000.00, and that he is financially unable to comply with the terms of the Compromise or the Orders related to the Compromise. (Transcript, pp. 86, 99-101).

7

The Debtor's testimony is not contradicted. Although it appears that the Debtor previously earned substantial income, the evidence does not establish that the Debtor was in possession of any significant portion of the Settlement Payment at the time that the amounts to the Trustee were due. There is no evidence, for example, that the Debtor owned any bank accounts containing adequate funds to pay the Trustee, that the Debtor has received any income during the Settlement Payment period, or that the Debtor has paid other claims instead of the Trustee after the Orders on the Compromise were entered.

In other words, the evidence does not establish that the Debtor willfully and intentionally disobeyed the Court's Orders regarding the Compromise, or concealed any funds from which the Settlement Payment could have been made. See In re Streckman, 2013 WL 3712440, at 2 (Bankr. N.D. Tex.)(A debtor did not willfully and intentionally refuse to obey an order, where the debtor's noncompliance resulted from an inability to pay and no funds were available for turnover.); and In re Payne, 2010 WL 1856514, at 4 (Bankr. E.D. Tenn.)(The Debtors did not refuse to turn over a tax refund, because they did not have the refund and had no power to comply with the turnover order.).

**Conclusion**

The Trustee entered into a compromise of controversy with the Debtor during the Debtor's Chapter 7 case. The Debtor did not comply with the terms of the Compromise, and the Trustee subsequently filed the Complaint that commenced this adversary proceeding. In the Complaint, the Trustee asserts that the Debtor's discharge should be denied or revoked based on his noncompliance with the Orders entered pursuant to the Compromise.

For a debtor's discharge to be denied under §727(a)(2)(B) or §727(a)(6)(A), a plaintiff must show that the debtor intended to hinder or defraud his creditors, or that the Debtor willfully and intentionally refused to obey a court order.

In this case, the evidence does not establish that the Debtor had the financial ability or resources to make the payment due pursuant to the Compromise, or to comply with the Orders related to the Compromise. Accordingly, the evidence does not establish that the Debtor's noncompliance with the Orders was willful and intentional, and the Debtor's discharge should not be denied based on his failure to perform under the Compromise.

Accordingly:

**IT IS ORDERED** that:

1. The discharge of the Debtor, Thomas Matthew DiVenere, will not be denied based on the Debtor's noncompliance with the terms of the Compromise entered with the Chapter 7 Trustee.

2. A separate Final Judgment will be entered in this adversary proceeding in favor of the Debtor, Thomas Matthew DiVenere, and against the Plaintiff, Gordon P. Jones, as Chapter 7 Trustee.

**DATED** this 8th day of May, 2014.

**BY THE COURT**

PAUL M. GLENN
United States Bankruptcy Judge